IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY N. JACKSON,                )
                                   )
              Petitioner,          )
                                   )
         v.                        )    Civ. Act. No. 09-0306
                                   )    Crim. Act. No. 04-0327
                                   )
UNITED STATES OF AMERICA,          )
                                   )
              Respondent.          )

MEMORANDUM

Gary L. Lancaster,
Chief Judge.                                    August **10**, 2010

This is an action to vacate sentence. On June 28, 2006,
a jury found petitioner guilty of unlawful possession of a firearm
by a convicted felon in violation of 18 U.S.C. § 922(g)(1). On
November 3, 2006, this court sentenced petitioner to one hundred
eighty (180) months in prison, to be followed by five (5) years of
supervised release. The 180-month incarceration period was well
below the guideline range of 235-293 months.

On March 11, 2009, petitioner, Anthony N. Jackson, filed
the pending pro se[1] motion to vacate, set aside, or correct his
sentence pursuant to 28 U.S.C. § 2255. In his motion, petitioner
argues that his attorney, William C. Kaczynski ("defense counsel"),
was so ineffective that he was denied his right to counsel

---

[1]

The court is mindful that a pro se movant cannot be held to
the same stringent standards as attorneys. See United States
v. Otero, 502 F.3d 331, 334 (3d Cir. 2007).

guaranteed by the Sixth Amendment to the United States Constitution.

Specifically, petitioner contends that defense counsel was ineffective because he allegedly did not: (1) request appointment of a DNA expert; (2) hire a fingerprint expert; (3) submit petitioner's clothes to a fabric analyst or forensic expert; (4) compel the court to order the government to provide the complete custodial records of Detective Kavals to defense counsel prior to trial; (5) interview and subpoena petitioner's co-defendant; (6) file a motion in limine to prohibit the government from introducing petitioner's prior drug convictions into evidence; (7) request a polygraph expert and seek admission of the results of the examination into evidence; (8) move for a reduction in petitioner's sentence; and (9) advise petitioner to testify at trial. In addition, petitioner argues that certain newly discovered evidence warrants a new trial pursuant to Federal Rule of Criminal Procedure 33(b).

The United States Government (the "government") opposes petitioner's motion to vacate sentence and argues that petitioner was not denied effective assistance of counsel, and that there has been no "newly discovered evidence" as petitioner claims.

2

For the reasons that follow, petitioner's motion to vacate sentence will be denied without a hearing.[2]

## I.   BACKGROUND

### A.   Procedural History

On November 3, 2006, this court sentenced petitioner to one hundred eighty (180) months in prison, to be followed by five (5) years of supervised release. On November 13, 2006, petitioner appealed his conviction to the United States Court of Appeals for the Third Circuit on the basis that this court: (1) permitted two police officers to testify as to prior encounters with petitioner; (2) refused to recognize the defense to 18 U.S.C. § 922(g) of transitory possession; (3) declined to give a jury instruction related to transitory possession; and (4) denied petitioner's motion for acquittal.

On June 27, 2008, the court of appeals affirmed petitioner's conviction. United States v. Jackson, 282 Fed. App'x 999, 1003 (3d Cir. 2008). The court of appeals concluded that the testimony of the two officers was more probative than prejudicial

---

[2]

A district court is required to hold an evidentiary hearing on a motion to vacate filed under 28 U.S.C. § 2255 "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."   28 U.S.C. § 2255(b); United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008).   Based on our review of the motion, the response and reply thereto, and the record in this case, we hold that a hearing is not required here because it is clear that petitioner is not entitled to relief.

because the officers were able to correctly identify petitioner as the person who committed the crime.  Id. at 1001.  The court of appeals also concluded that section 922(g) does not provide for any affirmative defenses.  Id. at 1002.

Although the court of appeals recognized that all federal courts of appeal have recognized a "justification" defense under section 922(g), it concluded that the record does not support the invocation of that affirmative defense in this case.  Id.  For these reasons, the court of appeals was not persuaded by petitioner's argument that the district court erred when it denied petitioner's motion for acquittal.  Id. at 1003.

On March 11, 2009, petitioner filed motions for reconsideration of judgment, for merger of sentences, and for concurrent sentences.[3]  On March 14, 2009, we denied these motions.

As noted above, petitioner was convicted of the unlawful possession of a firearm.  The facts and circumstances behind this conviction are as follows.

B.   Factual Background

Testimony at trial revealed that on July 17, 2004, at 2:00 a.m. in Pittsburgh, Pennsylvania, police officers in unmarked cars observed a silver, 1999 Dodge Stratus that failed to stop at a stop sign.  The Dodge then made two turns without signaling. The

---

3

Petitioner was incarcerated for certain state court crimes associated with the incident at issue.

4

police officers activated the emergency lights of their unmarked vehicles and pulled the Dodge over.

The officers observed four occupants in the Dodge, and one of the officers recognized the driver as Jamal Williams. The officers ordered Williams to turn the car off; instead, Williams drove away. The officers chased Williams for about two miles, during which time two other marked police cars joined the pursuit. Williams pulled the Dodge into a parking lot adjacent to an apartment complex. Williams and petitioner jumped out of the front passenger seat of the car and ran into the apartment complex, locking the security door behind them.

During their pursuit of Williams and petitioner, the police officers saw Williams carrying a handgun. The officers also saw petitioner run into a charcoal grill that sprayed white dust on his clothing and his hands.

A resident inside of the apartment building let the officers into the building. The officers found Williams and petitioner in apartment 7190-B because of the charcoal hand prints they observed on the apartment door. With one set of officers waiting on the other side of the apartment, another set of officers knocked on the front door of the apartment and identified themselves. Eventually, the occupant of the apartment opened the door. The police then observed Williams sitting on the couch and arrested him.

Meanwhile, one of the officers on the other side of the apartment, Detective Robert Kavals, identified petitioner through the window and observed him throw two guns out of the window. Detective Kavals identified petitioner based on four or five previous encounters he had with petitioner, including one that had taken place just three weeks before this incident that had lasted thirty to forty minutes.

At trial, a jury convicted petitioner of unlawfully possessing the two handguns he tossed out of a window, in violation of 18 U.S.C. § 922(g)(1).

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

Petitioner contends that his counsel was ineffective based on the nine grounds identified above.

For petitioner to succeed on an ineffective assistance of counsel claim, he must prove: (1) that his counsel was deficient; and (2) that he was prejudiced by his counsel's deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). The court of appeals recently observed that, in order to satisfy the first prong of the Strickland test, petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Lewis v. Horn, 581 F.3d 92, 106 (3d Cir. 2009) (quoting Strickland, 466 U.S. at 688). Accordingly, we "must make every effort ... to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 113 (citation and internal quotation omitted). The court of appeals directs that we

> must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Id. (citation and internal quotation omitted).

The court of appeals noted, however, that "[t]he presumption can be rebutted by showing that the conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound." Id. (citation and internal quotation omitted).

Generally speaking, the court of appeals advises that we first evaluate the prejudice prong of the Strickland analysis because "this course of action is less burdensome to defense counsel." United States v. Booth, 432 F.3d 542, 546 (3d Cir. 2005) (quoting United States v. McCoy, 410 F.3d 124, 132 n.6 (3d Cir. 2005) (internal quotations omitted)).

To establish prejudice, petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir. 2000). In other words, petitioner must show that there is a

reasonable probability that his counsel's errors resulted in his conviction. See Glover v. United States, 531 U.S. 198, 203 (2001).

     1.   Defense Counsel's Trial Strategies Were Effective

     a. DNA & Fingerprint Experts

Petitioner's first three allegations regarding defense counsel's failure to hire a DNA, fingerprint, or fabric analyst/ expert relate to defense counsel's trial tactics and strategy. Petitioner contends that a DNA expert and fingerprint analyst would have shown that neither the petitioner's DNA nor his fingerprints were present on the firearms in question.

According to Strickland, defense counsel does not have to exhaustively investigate every possible defense in order to be effective. Id. at 690-91. Defense counsel may conclude, in his professional judgment, that a particular line of defense may be fruitless or harmful to his client's case and choose not to pursue such defense. Id. at 691. In determining whether defense counsel's judgment was effective, the court must consider defense counsel's investigation into the defense at the time defense counsel chose not to pursue it.

In this case, defense counsel's strategy regarding his decision not to hire a fingerprint analyst is set forth in great length in a letter dated February 2, 2010, in which he indicates the following:

    Mr. Jackson initially requested that fingerprint analysis
    be done on the two handguns that he was accused of

8

throwing out of the apartment window, and this issue was given early attention in preparation for the trial...

We also discussed the fact that an inconclusive result or a finding that there were no useful prints would eliminate our line of argument that the Government's failure to conduct a fingerprint analysis of the handguns created a serious reasonable doubt about guilt. Since the sole evidence of possession was the testimony of a police officer who claimed to have looked up into the window of an unlit room and seen Mr. Jackson toss the two handguns out the window, and since we had trial witnesses who testified that when Mr. Jackson ran into the apartment he was not carrying any handgun [sic], the strategy was to argue to the jury that the police failure to have the guns analyzed for fingerprints was due to their concerns that Mr. Jackson's prints would not show up and that their lack of proof on this important point created reasonable doubt.

[Crim. Doc. 04-0327, at No. 164-1].

Defense counsel went on to indicate that he was concerned that "there existed a risk that a fingerprint analysis might turn up a positive match on Mr. Jackson."

The record indicates that defense counsel had a number of discussions with petitioner concerning this type of scientific testing and the potential impact it would have on his trial strategy: "Mr. Jackson and I discussed the pros and cons of having the handguns submitted for fingerprint analysis on numerous occasions, and we also discussed the fact that any testing results would be known and disclosed to the Government since the firearms were in possession of the arresting officers." As set forth in defense counsel's February 2, 2010 letter:

The decision not to request fingerprint analysis was primarily based upon these factors. Without obtaining our

own fingerprint analysis, I was free to portray the
matter as a failure on the part of the Government to meet
its burden of proof. I could and did cross-examine the
various officers about the fact that they never attempted
to subject either of the firearms to fingerprint
analysis. I called numerous eyewitnesses who testified
that Mr. Jackson did not have a handgun on him when he
entered the apartment that night. I also argued to the
jury during closing that the lack of any scientific
fingerprint evidence linking Mr. Jackson to either of the
firearms meant that the Government had failed to meet its
burden of proof and created a reasonable doubt about
guilt, as did the fact that the police had not even
attempted to examine the firearm for fingerprints. An
inconclusive fingerprint analysis would have precluded
this line of defense and eliminated this argument.

Also, I expected based upon my experience and knowledge
of fingerprint testimony that even if the handguns were
examined for fingerprints and Mr. Jackson's fingerprints
were not found on them, the prosecutor would be able to
obtain a concession from my expert that it was still
possible that Mr. Jackson could have handled either
handgun but that no prints of value had been found. All
of the same considerations likewise applied with respect
to the decision not to request DNA analysis of the
handguns, and I recall pointing out the lack of any DNA
evidence and arguing during closing that the failure of
the Government to even attempt to conduct any DNA
analysis itself created reasonable doubt.

Finally, defense counsel's letter concludes, "All of
these matters regarding trial strategy were discussed with Mr.
Jackson and also possibly with our investigator, Mr. Ronald Getner,
well prior to trial."

Based upon the foregoing evidence, petitioner cannot
satisfy either prong of Strickland with respect to defense
counsel's trial strategies involving DNA and fingerprint experts.
The record shows that defense counsel hired other experts, such as
a private investigator, who took photographs of the crime scene,

10

and he used those photographs at trial. The record also shows that defense counsel considered hiring DNA and fingerprint experts, but given his experience and knowledge as a criminal defense attorney, he determined it would be in his client's best interest not to present such experts to the jury in this case. Defense counsel's strategy was to argue that the lack of such evidence was a failure on the part of the government to meet its burden of proof and establish reasonable doubt. Had the DNA or fingerprint testing come back positive or inconclusive, much of defense counsel's theory about petitioner's case would have been eliminated.

b. Fabric Analyst/Forensic Expert

Petitioner contends that defense counsel should have had a fabric analyst or forensic expert examine petitioner's clothing for charcoal residue to rebut the government's claim that the same charcoal evidence that led the police to petitioner was on petitioner's clothes. Petitioner further contends that such evidence would have corroborated defense witnesses' testimony that petitioner did not possess the firearms at issue.

The record indicates that the government never made such a claim. The charcoal residue on petitioner's clothing was never addressed at trial by the government's witnesses. The closest any of the witnesses came to addressing this issue was testimony that, while fleeing from the car into the apartment, petitioner fell against a grill with charcoal and charcoal dust in it. The police

observed a charcoal hand print on the apartment door behind which they found petitioner. Because none of the testimony presented by government witnesses mentioned anything about charcoal residue on petitioner's clothing, petitioner has not, and cannot meet the two prong test of Strickland with respect to defense counsel's failure to hire a fabric/forensic analyst.

Thus, the court finds that defense counsel's decision not to hire DNA, fingerprint, and fabric/forensic experts was within the range of reasonable professional assistance and constituted sound trial strategy. Furthermore, even if petitioner could have established that defense counsel's conduct was ineffective, petitioner has failed to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

## 2. Detective Kavals's Files

Petitioner next contends that defense counsel was ineffective because he did not compel the court to order the government to provide the complete custodial records of Detective Kavals to defense counsel prior to trial. Petitioner specifically contends that his counsel should have filed a motion to compel

potential Brady/Giglio and Jencks Act materials relating to Detective Kavals.[4]

To the contrary, the record reflects that defense counsel, through requests via letter and motions for discovery, requested all Brady/Giglio materials related to the case, and all Jencks Act materials relating to government witnesses, including Detective Kavals. In its briefs and other representations to the court, the government submitted that it complied with all such requests by defense counsel.

In addition, defense counsel requested discovery of "each agent's and police officer's personnel file for review of items" contained within defendant's discovery motion. The government complied with this request and agreed to provide defense counsel with any exculpatory records identified. Detective Kavals also testified at both the suppression hearing and at trial that, to the extent that any Brady/Giglio and Jencks Act materials exist, they were provided to defense counsel. Accordingly, we find that defense counsel was not deficient in this regard.

---

[4]

Petitioner refers to this information as Federal Rule of Evidence 404(3)(b) materials, however, there is no such rule. We will assume, for purposes of this motion, that petitioner is referring to Brady/Giglio, Jencks Act, and/or other impeachment evidence concerning himself or Detective Kavals.

### 3. Defense Counsel's Decision Not To Interview/Subpoena Co-Defendant

Petitioner contends that defense counsel was ineffective because he failed to interview and/or subpoena petitioner's co-defendant, Mr. Jamal Williams.

Initially, we note that the defense counsel wanted to call Mr. Williams as a witness. However, according to the record, after he spoke with Mr. Williams's attorney, it became clear that Mr. Williams would not provide any exculpatory evidence:

> Prior to trial I spoke with Attorney Jay J. Finkelstein, counsel for co-defendant Jamal Williams, because I had hoped to call Williams as a trial witness. Counsel informed me that Mr. Williams could not and would not exculpate Mr. Jackson with respect to the two handguns. I also obtained a copy of the transcript of Williams' guilty plea colloquy. The plea colloquy transcript confirmed counsel's representations. The prosecutor's summary of the evidence was that on the night in question Williams possessed a Ruger Model P97DC .45; that Jackson possessed a second handgun, and that Jackson "disposed of them from one of the rear windows of the apartment building." Williams testified under oath during the plea colloquy that the Government's summary of the evidence was accurate, and that there was nothing stated in the summary with which he disagreed.

[Crim. Doc. 04-0327, at No. 164-1].

The court's review of Mr. Williams's plea colloquy transcript confirms defense counsel's assertions. Based on the foregoing, the court concludes that defense counsel's performance was not deficient, and that petitioner was not prejudiced by defense counsel's tactical decision not to interview or subpoena

14

Mr. Williams, given that Mr. Williams's counsel indicated Mr. Williams would not provide any exculpatory evidence.

### 4.  Motion Regarding Prior Drug Convictions

Petitioner contends that defense counsel was ineffective because he allegedly failed to file a motion in limine to prohibit the government from introducing petitioner's prior drug convictions into evidence.

However, on April 13, 2006, defense counsel did file such a motion with the court entitled "Motion in Limine to Exclude or Limit Evidence of Predicate and Prior Convictions and Memorandum in Support of Motion [Id. at Doc. No. 79].  In that detailed, fifteen page motion, defense counsel argued for the exclusion of petitioner's prior drug convictions, requesting that: (1) no mention of the predicate convictions be made to the jury; (2) the counts on the indictment be severed so as to limit any prejudice; (3) the government be prohibited from using prior convictions on cross-examination of petitioner; and (4) if allowed to be used, any evidence of the nature of the prior convictions be excluded.

During petitioner's trial, no mention of the number or nature of petitioner's predicate convictions was ever heard by the jury.  Due to the nature and number of petitioner's predicate convictions, defense counsel entered into a stipulation with the government concerning these convictions, which provided: "Prior to July 17, 2004, the defendant, Anthony Jackson, was convicted of a

15

felony punishable by a term of more than one year in prison, thereby making him ineligible to legally possess a firearm under federal law." The court further limited any discussion of petitioner's prior convictions to the language of the parties' stipulation.

The government sought to introduce the details of petitioner's prior arrest by Detective Kavals and another detective as Rule 404(b)[5] evidence, to establish the basis by which the officers would have recognized and identified petitioner. Defense counsel objected to the admission of this evidence, arguing that it was irrelevant. The court agreed and limited the government's presentation to the officers' prior encounter with petitioner and to testimony concerning the officers' ability to clearly view the petitioner. Furthermore, because petitioner never testified at trial, the government was not able to cross-examine him on these predicate crimes.

Accordingly, we find that defense counsel was effective and petitioner was not prejudiced by the government's limited use of his predicate crimes at trial.

---

[5]

Federal Rule of Evidence 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...."

16

### 5. Failure To Testify At Trial

Petitioner contends that defense counsel was ineffective for "erroneously advising [him] not to testify in his own defense."

From the record, it appears that defense counsel's advice was based upon the fact that if petitioner were to testify, all of his predicate convictions, which defense counsel fought to have excluded from trial, would have been properly introduced to the jury on cross-examination of petitioner. Such a result would have changed the entire case and undermined defense counsel's strategy, which was to attack Detective Kavals's testimony through evidence relating to distance and lighting in the apartment complex by presenting testimony from the defense investigator and seven fact witnesses, which directly contradicted the accounts of the arresting officers.

Considering all the evidence presented, we find that defense counsel's strategy was reasonable and effective, and that petitioner was not prejudiced by defense counsel's advice that he not testify at trial.

### 6. Reduction In Sentence

Petitioner claims that defense counsel was ineffective because he did not move for a reduction in petitioner's sentence. To the contrary, the record indicates that defense counsel made such an objection in the "Statement of Position of Defendant Anthony N. Jackson" [Id. at No. 122]. Over the course of seven

pages, defense counsel argued for a departure or variance in petitioner's sentence [Id. at pp. 7-14]. Defense counsel repeated these arguments at petitioner's sentencing, and the court granted a downward departure from the sentencing guideline range of 235-293 months, to a sentence of 180 months, ultimately granting petitioner a four-year reduction in his sentence.

Accordingly, we find that defense counsel requested a sentence reduction on behalf of petitioner. Defense counsel's request was reasonable, and petitioner was not prejudiced by it.

7. Polygraph Test

Petitioner contends that defense counsel was ineffective because he did not request a polygraph expert or request that the results of the polygraph examination be admitted at trial.

The record indicates that defense counsel requested a polygraph test [Id. at No. 95 ("During plea negotiations between defense counsel and the attorney for the government, defense counsel initially offered to have Defendant take a polygraph examination... To the government's knowledge, such an examination was never taken by Defendant.")].

Even if a polygraph examination had taken place, it is doubtful whether the results would have been admissible at trial. The court of appeals has not adopted a per se rule excluding polygraph evidence in criminal proceedings. United States v. Lee, 315 F.3d 206, 214 (3d Cir. 2003). However, there is disagreement

18

amongst federal courts of appeal regarding whether such evidence is reliable and/or admissible. See, e.g., United States v. Scheffer, 523 U.S. 303, 310-11 (1998); United States v. Sanchez, 118 F.3d 192, 197 (4th Cir. 1997) ("[P]olygraph evidence is inadmissible in this circuit"); United States v. Lea, 249 F.3d 632, 638 (7th Cir. 2001) (quoting Scheffer, 523 U.S. at 309) ("There is simply no consensus that polygraph evidence is reliable. To this day, the scientific community remains extremely polarized about the reliability of polygraph techniques."); but see United States v. Posado, 57 F.3d 428, 434 (5th Cir. 1995) ("[W]hen given under controlled conditions, the polygraph technique accurately predicts truth or deception between seventy and ninety percent of the time").

This disagreement arises out of the division among those in the scientific community as to the reliability of polygraph techniques. See, Scheffer, 523 U.S. at 309-10. Some studies have concluded that polygraph examinations are reliable, while others have found that the accuracy of a polygraph is "little better than could be obtained by the toss of a coin." Id. at 310.

We find that defense counsel was effective in this regard, and his conduct did not prejudice petitioner. Even if defense counsel had never raised the notion of a polygraph test, we find that such a trial decision/tactic would not render defense counsel ineffective and would not have severely prejudiced

petitioner given its questionable admissibility and use as a trial tactic.

Accordingly, the record shows that petitioner is not entitled to relief on his claims for ineffective assistance of counsel.

B.    Newly Discovered Evidence

Finally, petitioner contends that certain newly discovered evidence warrants a new trial pursuant to Federal Rule of Criminal Procedure 33(b).

In April 2009, Mr. Williams, petitioner's co-defendant sent a letter to defense counsel which provided, "[Petitioner] never possessed either firearm nor did he throw them out the window I did [sic]." Petitioner contends that Mr. Williams did not send this letter to defense counsel before Mr. Williams' trial because Mr. Williams was afraid that the letter may increase his sentence. Petitioner contends that this "newly" discovered evidence entitles him to a new trial.

A district court may only grant a new trial on the basis of newly discovered evidence if five requirements are met: (1) the evidence was, in fact, newly discovered since the time of trial; (2) facts are alleged from which a court can infer diligence on the part of the movant; (3) the new evidence is not "merely cumulative or impeaching"; (4) the evidence is material to the issues involved; and (5) the evidence is such, and of such nature, that on

a new trial it would probably produce an acquittal. <u>United States</u> <u>v. Saada</u>, 212 F.3d 210, 216 (3d Cir. 2000). Petitioner bears the heavy burden of setting forth these requirements, and the district court's decision on such a motion is discretionary. <u>Id</u>.; <u>United</u> <u>States v. Ashfield</u>, 735 F.2d 101, 112 (3d Cir. 1984).

Based on the standard set forth above, we find that Mr. Williams's October 26, 2007 letter/affidavit[6] does not constitute newly-discovered evidence under controlling case law. Evidence is not considered to be "newly discovered" when it could have been known by the defendant or defense counsel through their own diligence. <u>United States v. Bujese</u>, 371 F.2d 120, 125 (3d Cir. 1967). While it may be true that the assertions in the letter are, in one sense, newly available, they contradict the statements Mr. Williams made to the court under oath at the time of his change of plea hearing. Therefore, such testimony is merely impeaching and is unlikely to produce an acquittal. Accordingly, this letter does not constitute "newly discovered evidence". <u>See</u>, <u>Pelullo v. United</u> <u>States</u>, Nos. 08-4343, 09-1882, 2009 WL 3863329, at *2-3 (3d Cir. Nov. 19, 2009) (finding no reasonable diligence, and because defendant cannot show that a jury probably would have acquitted him had the evidence been presented at trial, Rule 33 motion denied);

---

[6]

Petitioner entitles Mr. Williams' letter as an "affidavit", but it is not an affidavit because it has not been sworn to by Mr. Williams. The notarization only states that the attached copy is a true, correct, and complete copy of the original.

21

<u>United States v. Jasin</u>, 280 F.3d 355 (3d Cir. 2002) (affirming denial of Rule 33 motion for new trial, providing detailed analysis adopting majority rule among the circuits that newly-available evidence does not constitute newly discovered evidence, where co-defendant took the Fifth at trial, but was now willing to exculpate defendant).

Therefore, we find that Mr. Williams's change in his testimony does not constitute "newly" discovered evidence, and we reject any notion that the "new" evidence is substantively exculpatory and would have likely resulted in acquittal. The government presented significant evidence supporting petitioner's conviction and proving that petitioner unlawfully possessed a firearm on the night in question.

We find that based on a review of all the evidence presented at trial, along with this "new" evidence, petitioner cannot show that a jury probably would have acquitted him had the evidence been presented at trial. The overall circumstances and evidence in this case are such that regardless of this "new" evidence, the jury was adequately convinced that petitioner unlawfully possessed a firearm on the night in question. As such, petitioner cannot satisfy the elements warranting a new trial based on newly discovered evidence.

## III. CONCLUSION

Based on the foregoing, the record conclusively establishes that petitioner is not entitled to relief on his claim for a new trial based on ineffective assistance of counsel or newly discovered evidence. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY N. JACKSON,              )
                                 )
              Petitioner,        )
                                 )
         v.                      )        Civ. Act. No. 09-0306
                                 )        Crim. Act. No. 04-0327
UNITED STATES OF AMERICA,        )
                                 )
              Respondent.        )

ORDER

AND NOW, this 30ᵗʰ day of August, 2010, IT IS HEREBY

ORDERED that petitioner's motion to vacate sentence [Crim. No. 04-

0327, at Doc. No. 145] is DENIED.

IT IS FURTHER ORDERED that a Certificate of Appealability

SHOULD NOT ISSUE with respect to the court's order denying

petitioner's section 2255 motion because, for the reasons set forth

in the memorandum, he has not "made a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also

Third Circuit Local Rule 22.2 (stating that "[i]f an order denying

a petition ... under § 2255 is accompanied by an opinion ... it is

sufficient if the order denying the certificate [of appealability]

references the opinion ....").

The Clerk of Court is directed to mark this case closed.

_____, C.J.

cc: All Counsel of Record
    Anthony N. Jackson, pro se (I.D. No. 08434068)
    Federal Correctional Institution
    P.O. Box 1000
    Loretto, PA 15940-1000